# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| KAREEN WARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Jury Trial Demanded Herein |
| EXPERIAN INFORMATION SOLUTIONS, INC., ) | |
| TRANS UNION, LLC, and ) | |
| CHIME FINANCIAL, INC., ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff Kareen Ward, by and through undersigned counsel, and for his Complaint against the Defendants, Experian Information Solutions, Inc., Trans Union, LLC, and Chime Financial, Inc., he states and avers as follows:

## INTRODUCTION

1. This is an action for actual, statutory and punitive damages brought by Plaintiff against Defendants for the willful, knowing, and/or negligent violation of, *inter alia*, Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.*, known as the *Fair Credit Reporting Act* ("FCRA") which relates to the proper dissemination and use of consumer credit and other financial information.

## PARTIES

2. Kareen Ward ("Plaintiff") is a natural person that resides in Belton, Missouri.

3. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. § 1681a(c).

4. Experian Information Solutions, Inc. ("Experian") is foreign corporation that regularly transacts business in Missouri.

5. Experian is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

6. Trans Union, LLC ("Trans Union") is foreign limited liability company that regularly transacts business in Missouri.

7. Trans Union is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

8. Chime Financial, Inc. ("Chime") is a domestic corporation that provides financial technology products to Missouri consumers.

9. Chime is a furnisher of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681*p*.

11. Venue in this District is proper because Plaintiff resides in this District, Defendants transact business in this District, and the conduct complained of occurred in this District.

## BACKGROUND AND FACTUAL ALLEGATIONS

12. In January 2023, Plaintiff identified an account being reported by Chime to his Trans Union credit report that he did not recognize.

13. In an effort to resolve the issue, he contacted Chime and initiated a fraud claim.

14. Chime responded to Plaintiff's concerns by electronic mail on January 17, 2023, stating they closed the unauthorized account.

15. Wanting to stay vigilant about the issue, Plaintiff continued monitoring his credit reports to ensure they received removal of the fraudulent account as promised by Chime.

16. A few months passed and Plaintiff "pulled" a new credit report, in April 2023.

17. Surprisingly, the fraudulent Chime account continued to appear on his Trans Union credit report, months after Chime told Plaintiff they closed the account and would not report any information about this account.

18. Frustrated but not losing resolve, Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB") on or around April 27, 2023, hoping to get the relief he deserved.

19. Additionally, to ensure his credit reports did not continue to include the fraudulent account information and associated incorrect personal information, Plaintiff contacted the three major consumer reporting agencies ("CRAs") – Equifax, Experian and Trans Union - by letter on or about May 18, 2023, to dispute the fraudulent Chime account and an incorrect Michigan address being reported by Experian and Equifax.

20. Pursuant to 15 U.S.C. § 1681i(a)(2) of the FCRA, the CRAs were then required to reasonably investigate Plaintiff's disputes, as well as forward copies of Plaintiff's dispute letters to Chime.

21. Pursuant to 15 U.S.C. § 1681s-2(b) of the FCRA, Chime was then obligated to investigate the disputed information for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

22. However, Plaintiff did not receive the investigation he was entitled to by federal law.

23. Moreover, when Plaintiff pulled a new copy of his credit reports at the end of June 2023, he was extremely frustrated to find that the Chime account remained unchanged, and the incorrect personal information continued to be reported by Experian.

24. Additionally, the CFPB completed their investigation and Chime was notified that this fraudulent account remained on his credit report. Chime again assured Plaintiff they would take care of the issue.

25. Although let down that Trans Union and Experian failed to suppress the account and personal information in the face of the clear fraud, Plaintiff resolved not to give up and sent additional letters to Trans Union and Experian on or about July 7, 2023, hoping to get his credit reports corrected.

26. Once again, Trans Union and Experian either conducted no investigation after being contacted by Plaintiff in July or said investigation was so lacking as to allow the clear errors to remain damaging Plaintiff's credit score and financial future.

27. Plaintiff attempted once more to contact Trans Union and Experian by letter on or around August 14, 2023. As with his preview disputes, nothing has come from that request.

28. After contacting Trans Union, Experian, and Chime repeatedly to fix this issue to no avail, Plaintiff is at a loss as to how to follow, let alone combat, the Defendants' logic in allowing a fraudulent account and personal information to remain on Plaintiff's credit report.

29. Plaintiff fears that he will not be able to obtain an accurate credit report, and so, will continue to be denied countless financial opportunities he should otherwise be eligible for. This has imposed upon him great sadness and frustration, as well as anger and disgust.

30. Plaintiff also finds it profoundly unfair that Chime can allegedly "verify" the accuracy of fraudulent information, and Trans Union continues to let Chime do it.

31. Plaintiff has lost all trust in the credit reporting system and believes litigation is his only option to fix his credit reports.

## FIRST CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by Experian

32. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

33. A "consumer reporting agency" is defined by the FCRA as follows:

34. [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

35. Experian is a "consumer reporting agency" as defined by the FCRA.

36. Section 1681n of the FCRA imposes civil liability on any entity "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n(a).

37. Section 1681o of the FCRA provides for civil liability against any entity that is negligent in failing to comply with any requirement imposed under the Act.

38. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

39. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

**Experian's Reasonable Reinvestigation Violations**

40. By letters dated May 18, 2023, July 7, 2023, and August 14, 2023, Plaintiff disputed the fraudulent personal information appearing on his Experian credit report, specifically a Michigan address.

41. Plaintiff specifically advised Experian that a mistake had been made, provided all necessary information to Experian to support same, and requested the wrong address be deleted accordingly.

42. Either Experian conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false information to remain in Plaintiff's credit file.

43. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Experian willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

44. As a direct and proximate result of Experian's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

45. As a direct and proximate result of Experian's willful and/or negligent refusal to remove false information from Plaintiff's credit report upon dispute as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure

of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

46. Upon information and belief, Experian has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

47. Experian's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

**Experian's Failure To Follow Reasonable Procedures
To Assure Maximum Possible Accuracy**

48. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

49. On numerous occasions, Experian has prepared a patently false consumer report concerning Plaintiff.

50. Despite actual and implied knowledge that the Michigan address did not belong to Plaintiff, Experian readily sold such false reports to one or more third parties without regard to the accuracy or inaccuracy of what Experian reported.

51. On each such instance, Experian willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

52. Through Plaintiff's communications with Experian, Experian knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff. Nevertheless, Experian took no measure to stop painting a false and damaging picture about Plaintiff.

53. Plaintiff has suffered out-of-pocket loss as a result of Experian's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Experian's pockets.

54. As a direct and proximate result of Experian's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

55. Upon information and belief, Experian has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, specifically including allowing fraudulent accounts to remain in consumers' credit files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

56. Experian's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in his favor and against Experian, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## SECOND CLAIM FOR RELIEF

**Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by Trans Union**

57. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

**Trans Union's Reasonable Reinvestigation Violations**

58. By letters dated May 18, 2023, July 7, 2023, and August 14, 2023, Plaintiff disputed the fraudulent Chime account information appearing on his Trans Union credit report.

59. Plaintiff specifically advised Trans Union that a mistake had been made, provided all necessary information to Trans Union to support same, and requested the trade line be deleted accordingly.

60. Either Trans Union conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

61. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681$i$(a)(1).

62. As a direct and proximate result of Trans Union's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

63. As a direct and proximate result of Trans Union's willful and/or negligent refusal to remove false information from Plaintiff's credit report upon dispute as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

64. Upon information and belief, Trans Union has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

65. Trans Union's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

**Trans Union's Failure To Follow Reasonable Procedures
To Assure Maximum Possible Accuracy**

66. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

67. On numerous occasions, Trans Union has prepared a patently false consumer report concerning Plaintiff.

68. Despite actual and implied knowledge that the Chime account did not belong to Plaintiff, Equifax readily sold such false reports to one or more third parties without regard to the accuracy or inaccuracy of what Trans Union reported.

69. On each such instance, Trans Union willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

70. Through Plaintiff's communications with Trans Union, Trans Union knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff. Nevertheless, Trans Union took no measure to stop painting a false and damaging picture about Plaintiff.

71. Plaintiff has suffered out-of-pocket loss as a result of Trans Union's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Trans Union's pockets.

72. As a direct and proximate result of Trans Union's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

73. Upon information and belief, Trans Union has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, specifically including allowing fraudulent accounts to remain in consumers' credit files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

74. Trans Union's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in his favor and against Trans Union, and for the following relief:

(f) Actual damages sustained;

(g) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(h) Punitive damages in an amount to be determined by the jury;

(i) Reasonable attorneys' fees and costs; and

(j) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## THIRD CLAIM FOR RELIEF

**Negligent and Willful Violations of 15 U.S.C. § 1681s-*2* by Chime**

75. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

76. Chime is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

77. Furnishers of credit information have duties under the FCRA, specifically 15 U.S.C. § 1681s-2(b)(1), to investigate disputes initiated from consumers to CRAs as to the accuracy of information reported about them by the furnisher.

78. On at least three (3) occasions, namely May 18, 2023, July 7, 2023, August 14, 2023, Plaintiff contacted Trans Union ("the CRA")specifically to dispute the accuracy of the derogatory Chime account being reported about him.

79. Plaintiff specifically advised the CRA on each occasion that the information being reported was false, provided all necessary information to the CRA to support his dispute, and requested the false information be deleted accordingly.

80. Upon information and belief, and pursuant to 15 U.S.C. § 1681i(a)(2), Chime received notification of these disputes from the CRA.

13

81. Nevertheless, on multiple occasions in the last six months, the false Chime account was allowed to remain on Plaintiff's credit reports under the guise that Chime had "verified" the information as true.

82. Either Chime conducted no real investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow fraudulent information known to be false and highly damaging to remain in Plaintiff's credit file.

83. Chime's failures in this regard are exacerbated by the sheer number of times it was contacted about this particular account.

84. Chime's failures in this regard are exacerbated by the fact that Plaintiff personally contacted Chime on numerous occasions to dispute this false information.

85. Chime's failures in this regard are further exacerbated by the fact that the CFPB was involved and contacted Chime concerning this account.

86. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Chime negligently and/or willfully violated § 1681s-2(b)(1) with respect to each dispute lodged by Plaintiff.

87. As a direct and proximate result of Chime's willful and/or negligent refusal to comply with the FCRA as described herein, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of creditworthiness, loss of credit opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by the jury, plus attorneys' fees and the costs of this action, pursuant to 15 U.S.C. § 1681o.

88. Chime's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against Chime, pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in his favor and against Chime, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable in this lawsuit.

Respectfully submitted,

/s/     **Thomas A. Addleman**
Thomas A. Addleman #51864
Credit Law Center, LLC

4041 NE Lakewood Way, Suite 140
Lee's Summit, MO 64064
Telephone: 816-246-7800
Facsimile: 855-523-6884
Email: toma@creditlawcenter.com
Counsel for Plaintiff